## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DOMINIC OLIVEIRA,                                   Civil Action No. 1:15-cv-10603-PBS
on his own behalf and
on behalf of all others similarly situated,

      Plaintiff,

v.

NEW PRIME, INC.

      Defendant.

---

### FIRST AMENDED COMPLAINT

---

Plaintiff, by and through his undersigned counsel, files this Class and Collective Action First Amended Complaint for unpaid wages against the above-listed Defendant.

This amendment is by right pursuant to F.R.C.P. 15(a)(1)(B).

### STATEMENT OF THE CASE

1.     Plaintiff Dominic Oliveira and those similarly situated are currently, or were formerly, employed by Defendant New Prime, Inc. ("New Prime") and, in many weeks, were paid less than minimum wage for each hour of work.

2.     Plaintiff Oliveira and those similarly situated were directed to do training sessions for which they received no pay, both at the beginning of New Prime's "Paid Apprenticeship" program and before becoming either a company or independent contractor driver.

3.     Because the Defendant paid the Plaintiff and those similarly situated, including employees labeled as trainees or independent contractors, by the mile but did not

compensate for other on duty time, the Plaintiff and those similarly situated were not paid statutory minimum wage.

4.     The Defendant violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and Missouri statutes related to wages and hours by failing to pay minimum wage for all hours worked in each workweek when due.

5.     The Defendant's violations of the Fair Labor Standards Act and Missouri and Maine's labor laws were willful, malicious and deliberate.

6.     Plaintiff Oliveira seeks compensation for the Defendant's violations of the Fair Labor Standards Act and Missouri's and Maine's minimum wage laws, on his own behalf and on behalf of all other similarly situated current and former employees (including those employees misclassified as independent contractors) of Defendant.

**PARTIES, JURISDICTION, AND VENUE**

7.     Plaintiff Oliveira recently moved his permanent residency from Maine to Florida. At various times throughout his employment (as both a standard employee and as an employee misclassified as an independent contractor) Plaintiff Oliveira was a resident of Worcester County, Massachusetts.

8.     Plaintiff Oliveira was employed by the Defendant at various times from approximately March 2013 through approximately June 2014.

9.     Plaintiff Oliveira was employed by the Defendant New Prime, though classified as an independent contractor, from approximately May 2013 through approximately June 2014, and he was labeled an employee again for a brief period in the fall of 2014.

10.     Plaintiff Oliveira's FLSA Consent to Sue is annexed hereto as Exhibit 1.

11.     Defendant New Prime is a registered Missouri business corporation with a principal business address of 2740 North Mayfair, Springfield, MO 65803. At all relevant times, Defendant New Prime was doing business in the Commonwealth of Massachusetts.

12.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 because this case arises under the laws of the United States. Specifically, this action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

13.     Plaintiff requests that this Court exercise supplemental jurisdiction over their claims under the laws of Missouri and Maine, pursuant to 28 U.S.C. § 1367.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2): the Plaintiff was permanently domiciled in Massachusetts when he was first employed, at various times while working for the Defendant he was in Massachusetts, and the Defendant conducts substantial business in the Commonwealth of Massachusetts.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

15.     Defendant New Prime hired Plaintiff Oliveira and all others similarly situated as employees or employees misclassified as independent contractors.

16.     Defendant New Prime has over $500,000 in gross receipts per year.

17.     Defendant New Prime hired Plaintiff Oliveira and all others similarly situated to transport goods in interstate commerce.

18.     Defendant New Prime employed two or more people, including the named Plaintiff, to handle and work on materials that move in interstate commerce.

**DEFENDANT NEW PRIME FAILS TO PAY FOR TIME SPENT TRAINING**

19.    New Prime conducts a "Paid Apprenticeship CDL training" to train new drivers but also to get the benefit of their labor. Prime advertises this program as "On-the-Job" Truck Driver Training Program. Student Truck Driver Program, annexed hereto as exhibit 2, Paid Apprenticeship CDL Training, annexed hereto as exhibit 3.

20.    New Prime tells the potential apprentices they won't have to pay tuition if they stay with New Prime for a year as either employee drivers or contractors.

21.    The whole purpose of the tuition forgiveness plan after a year of service to New Prime is to make clear to the apprentices that there will be a position available when they finish, and also to make it economically difficult for the apprentices to not accept this position. Further, New Prime employees reassure the potential apprentices that they will have a position at the end of the program, barring unforeseen circumstances.

22.    But even within the training program's structure, potential apprentices are promised a temporary spot on the payroll as B2 trainee drivers after about four weeks when they pass the CDL test, and therefore the apprentices understand that they will receive wages when they sign up for this paid apprenticeship.

23.    After a serious application process, apprentices selected for the program attend a four-day orientation at New Prime's facility in Missouri.

24.    The apprentices then drive with a New Prime driver for three to four weeks for a total of 10,000 miles. The drivers receive an advance of $200 per week for food that they are required to repay, but otherwise receive no remuneration.

25.    Under U.S. Department of Transportation regulations drivers' driving time and non-driving "on duty" time are strictly regulated. A New Prime instructor driver must

count his time supervising a trainee driver as on duty time but it does not count against driving time. A driver alone can only drive for 11 hours of his 14 hour period. But when he can use his extra duty hours to supervise a student he can often keep the truck moving for the entire period.

26.     Because New Prime is able to move loads faster with these extra student drivers, it profits from their labor, and effectively replaces the work that other paid drivers would do with the work of these trainees.

27.     In the third phase of the program the driver takes the CDL exam and then completes 30,000 miles as a "B2" company driver trainee. The drivers are paid wages of 14 cents per mile driven without regard to other compensable work time.

28.     After this, employees take more orientation classes, and are then classified as either company drivers or independent contractors. Drivers receive a $100 bonus to become independent contractors. The orientations take about a week and are unpaid. This is a different orientation than at the beginning of the apprenticeship program.

## DEFENDANT NEW PRIME ROUTINELY FAILS TO PAY MINIMUM WAGE TO TRAINEES

29.     Plaintiff Oliveira entered the apprenticeship program in March of 2013.

30.     Plaintiff Oliveira and the other apprentices were not paid for time spent in orientation either at the beginning of the program, or when before they started as company drivers or mislabeled independent contractors.

31.     Plaintiff Oliveira and other employees similarly situated drove trucks and moved cargo in interstate commerce for New Prime.

32.     Plaintiff Oliveira and other employees similarly situated delivered cargo as directed by New Prime.

33.    In this period, Plaintiff Oliveira routinely worked many hours driving hundreds and often thousands of miles. He was often required to assist a second driver and/or alternate driving time. For all time he was in a New Prime truck he was either driving or otherwise working for New Prime in some capacity. Because he was away from his home on company duty and responsible for the company's property, he was working most of the time while dispatched.

34.    New Prime's website for prospective apprentices says: "During your training period, you can expect to be out four to six weeks at a time. Once you complete training and upgrade to a solo company driver, you can expect to be out 3 to 4 weeks at a time (depending upon where you live), with a day off for every week you are out." Exh. 3.

35.    Plaintiff Oliveira's pay was often reduced with deductions, including the $25 deduction to pay back the $200 advances from the first training period. Plaintiff Oliveira also received travel allowances. New Prime did not make employment tax deductions on this money, presumably because it covered expenses for the benefit of the employer, and therefore the allowances cannot be considered wages. *See* Drivers Payroll Recap dated 4/17/13, annexed hereto as exhibit 4.

36.    On multiple occasions, despite working continuous tours of duty for entire weeks and driving thousands of miles, Plaintiff Oliveira was compensated less than minimum wage by New Prime.

37.    Because of the nature of long haul trucking, Plaintiff Oliveira spent almost all of his time doing compensable work for New Prime. This included loading and unloading, protecting the company property, and doing many other tasks for New Prime's benefit

away from his home. But New Prime only paid for those hours when the truck was actually moving.

38.     Examples from the Plaintiff's employment records show that he was often not paid minimum wage.

    a.    for the week of April 17, 2013, Plaintiff Oliveira was paid for 6156 miles over a period of 8 days and had net wages, after deductions, of $482.85. It would only take 66.6 hours of work at the FLSA minimum to reach $482.85. Even just counting the time while the truck was moving at a generous speed of 65 miles per hour, Plaintiff Oliveira must have worked at least 94.71 hours. Exh. 4.

    b.    for the week of May 1, 2013, Plaintiff Oliveira was paid for 5653 miles over a period of 7 days and had net wages, after deductions, of $441.36. It would only take 60.9 hours of work at the FLSA minimum wage to reach $441.36. Even just counting the time while the truck was moving at a generous speed of 65 miles per hour, Plaintiff Oliveira worked at least 86.97 hours. Drivers Payroll Recap dated 5/01/13, annexed hereto as exhibit 5;

39.     As described above, New Prime paid Plaintiff Oliveira on a per mile basis that often failed to bring his pay to the statutory minimum wage for each hour worked. New Prime paid other employee drivers similarly situated to Plaintiff Oliveira on a per mile basis and upon information and belief this often failed to bring their pay to the statutory minimum wage for each hour worked.

40.    Defendant New Prime made unjustified deductions from the paychecks of Plaintiff Oliveira. Upon information and belief, Defendant New Prime made identical or similar deductions from the paychecks of other employees similarly situated to Plaintiff Oliveira. In many weeks these deductions brought the pay of Plaintiff Oliveira and those similarly situated under the statutory minimum wage for each hour worked.

### DEFENDANT NEW PRIME MISCLASSIFIES EMPLOYEES AS INDEPENDENT CONTRACTORS

41.    After working as a trainee employee driver for New Prime in the Apprenticeship program, representatives of New Prime told Plaintiff Oliveira that he could make more money driving as an independent contractor than he could as an employee driver. Upon information and belief, New Prime representatives made similar promises to others similarly situated as Plaintiff Oliveira.

42.    When he returned from his trainee driving, New Prime put him up in their hotel and fed him in his cafeteria while they walked him through the process of becoming an independent contractor driver.

43.    First Plaintiff Oliveira was told pick three names for a new LLC. He was directed to go to a company on the second floor of New Prime's building called Abacus Accounting. They had him fill out a form and with his suggested names in ranked order and told him that they proceeded to create the LLC called Hallmark Trucking which was ready the next day.

44.    He was then instructed to go to Success Leasing on the first floor of New Prime's building to look for a truck. Upon information and belief, Success Leasing is a closely related corporation to New Prime.

45.    After selecting a truck, the Plaintiff was handed a pile of papers including documents for New Prime and Success and encouraged to sign and initial highlighted portions quickly so that he could get on the road. He was given no ability to negotiate these contracts except that he was later permitted to look for problems with the truck that would be fixed in the service center before he left. He felt pressure to complete this quickly because his load was waiting.

46.    The Plaintiff was then instructed to go to the New Prime company store to buy security locks for his truck. He was also charged at the "fuel isle," where New Prime fuels and equips trucks, for all of the additional tools of the trade that added up to around $5000. This was then deducted at $75 per week.

47.    The Plaintiff was not paid for his time setting up the LLC, selecting a truck, and equipping the truck, all of which were done under New Prime's direction. Upon information and belief similarly situated misclassified independent contractors were also not paid for this time.

48.    Plaintiff Oliveira's job responsibilities driving while labeled as an independent contractor for New Prime were substantially identical to his job responsibilities as a New Prime employee driver.

49.    Upon information and belief, others similarly situated to Plaintiff Oliveira, that were labeled as independent contractors, had job responsibilities substantially identical to the job responsibilities of employee drivers working for New Prime.

50.    Defendant New Prime exercised operational and actual control over Plaintiff Oliveira and others similarly situated under similar, if not substantially identical, agreements through, among other things, either directly or indirectly controlling drivers'

scheduling, vacations, home time, requiring drivers to take New Prime training courses and follow New Prime procedures, effectively requiring that drivers take certain shipments, and rendering drivers unable to work for other trucking and/or shipping companies. Because of the structure of lease payments, the drivers have no choice but to take shipments as directed by New Prime or they would quickly fall into default. The drivers bought insurance through a New Prime affiliated company.

51.    These drivers perform the essential function of New Prime's transport business, New Prime has the ability to hire and fire them, New Prime controlled the manner and rate of pay, kept all pay records, and effectively controlled their schedule through its dispatch and QUALCOMM system. Upon information and belief, this QUALCOMM system could not easily be adapted to other carriers, and at least in the short term the drivers had no choice but to take New Prime loads. Because the drivers had no ability to work for other companies in the short term, and the lease payments were due regardless of what they did, they had no choice but to follow New Prime's dictates in the same manner as any employee.

**DEFENDANT NEW PRIME INTENTIONALLY AND UNLAWFULLY FAILS TO PAY PLAINTIFF OLIVEIRA STATUTORY MINIMUM WAGES WHILE MISLABELED AS AN INDEPENDENT CONTRACTOR**

52.    While Plaintiff Oliveira was an employee of New Prime and misclassified as an independent contractor, New Prime often failed to pay Plaintiff Oliveira the statutory minimum wage. For example:

    a.    for the week of June 12, 2013, Plaintiff Oliveira was supposed to be paid for 1373 miles but after unjustified deductions, his pay was negative $296.48. Since he obviously worked many hours to drive over a thousand

miles, the negative pay is a violation of both the FLSA and Missouri wage laws. Exh. 6;

b.      for the week of July 17, 2013, Plaintiff Oliveira was supposed to be paid for 1517 miles, but after deductions his pay was negative $387.59. Since he obviously worked many hours to drive over a 1500 miles, the negative pay is a violation of both the FLSA and Missouri wage laws. Exh. 7;

c.      for the week of June 4, 2014 Plaintiff Oliveira was supposed to be paid for 1040 miles, but after deductions his pay was negative $121.69. Exh. 8;

d.      for the week of July 16, 2014 Plaintiff Oliveira was paid for 874 miles but after deductions that appear to be for the benefit of the employer his net pay was only $9.83. Again he wasn't paid close to the minimum wage for that time. Exh. 9;

e.      for the week of July 30, 2014, Plaintiff Oliveira was paid for 2161 miles but after deductions his pay was negative $323.99. Because he was paid a negative amount he was obviously not paid minimum wage for all of his time, including at least 33 hours of actual driving. Exh. 10.

53.    Defendant New Prime made unjustified, unpredictable, and poorly explained deductions from the paychecks of Plaintiff Oliveira. These deductions were often for items that are the tools of the trade or otherwise for the employer's benefit. Upon information and belief, Defendant New Prime made similar or identical deductions from the paychecks of employees including those misclassified as independent contractors similarly situated to Plaintiff Oliveira.

54.    In many weeks while Plaintiff Oliveira was an employee of Defendant New Prime, Defendant New Prime intentionally and unlawfully paid Plaintiff Oliveira and all others similarly situated an amount less than the statutory minimum wage for each hour of work.

### DEFENDANT NEW PRIME EMPLOYED THE PLAINTIFF AS A COMPANY DRIVER AND AGAIN FAILED TO PAY MINIMUM WAGE

55.    Plaintiff Oliveira grew frustrated that the amount of pay and time off was not as great as he was led to believe and quit the on or around the end of September 2014.

56.    In October of 2014 New Prime rehired Plaintiff Oliveira as a company driver. As a condition of employment he agreed that New Prime could deduct money from his checks to pay an alleged debt to Success Leasing.

57.    During this period he was based out of his home in Maine and made shorter regional trips from the Wal-Mart distributor.

58.    Defendant New Prime intentionally and unlawfully made significant deductions from pay that Defendant New Prime owed Plaintiff Oliveira upon the termination of his employment. Upon information and belief, New Prime made similar deductions from the pay of others similarly situated as Plaintiff Oliveira upon the termination of their employment.

59.    Specifically during the week of November 26, 2014, Plaintiff Oliveira was paid for 1104 miles over a period of 8 days and had net wages, after deductions, of $55.94. While a $14 wage advance was probably a legal deduction, the other deductions were unwarranted. In order to drive the 1104 miles he had to have worked well in excess of 8 hours that would yield minimum wage. Exh. 11.  Even just driving at 65 miles per hour

without counting the rest of the compensable time, it would take approximately 17 hours to drive 1104 miles.

60.    Therefore during that week, the Plaintiff was not paid minimum wage under the FLSA, Missouri, or Maine law.

61.    Upon information and belief, the Defendant makes significant unlawful deductions from the paychecks of many employees including those misclassified as independent contractors in their last paycheck to cover costs that should be borne by the employer.

62.    These deductions bring the pay below minimum wage for each hour worked.

63.    The Plaintiff incorporates Exhibits 1-11 into his complaint. Exhibits 2 and 3 are excerpts from the Defendant's webpage. Exhibits 4-11 are New Prime's business records provided to Plaintiff's counsel by Defense counsel.

## 216(b) COLLECTIVE ACTION ALLEGATIONS

64.    Plaintiff Oliveira asserts his Count I claim under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated employees currently and formerly employed by Defendants.

65.    Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the following classes:

**216(b) Class**: ALL CURRENT AND FORMER EMPLOYEES THAT DROVE FOR THE DEFENDANT, WHETHER OR NOT CATAGORIZED AS EMPLOYEES, TRAINEES, OR INDEPENDENT CONTRACTORS WHO WERE NOT COMPENSATED FOR ALL TRAINING TIME, PAID BY THE MILE WITHOUT REGARD TO HOURS WORKED AND/OR HAD IMPROPER DEDUCTIONS TAKEN FROM THEIR PAYCHECKS

66.    All potential 216(b) Class members are similarly situated because, among other things, they were all employees of Defendant and, upon information and belief, all suffered from the same policies of Defendant, including:

        a.    They were not paid for all training time;

        b.    They were paid by the mile without regard to the number of hours worked;

        c.    They each suffered from improperly made deductions from class members' paychecks; and

        d.    Defendant New Prime failed to pay class members at least statutory minimum wage for each hour of work as mandated by the FLSA.

### RULE 23 CLASS ACTION ALLEGATIONS

67.    The named Plaintiff asserts his Counts II - III claims as a Fed. R. Civ. P. 23 class action on their own behalf and on behalf of a class for which Plaintiff seeks certification.

68.    Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the following classes:

**Minimum Wage Class**: ALL CURRENT AND FORMER EMPLOYEES THAT DROVE FOR THE DEFENDANT, WHETHER OR NOT CATAGORIZED AS EMPLOYEES, TRAINEES, OR INDEPENDENT CONTRACTORS WHO WERE NOT COMPENSATED FOR ALL TRAINING TIME, PAID BY THE MILE WITHOUT REGARD TO HOURS WORKED AND/OR HAD IMPROPER DEDUCTIONS TAKEN FROM THEIR PAYCHECKS

69.    Upon information and belief, Defendant New Prime did not pay the putative Minimum Wage Class members the statutory minimum wage for all hours of work in many workweeks.

70.    The class is so numerous that joinder of all potential class members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the control of Defendants.

71.    The named Plaintiff estimates that there are thousands of similarly situated people. Defendant New Prime operates nationally and hires individuals, as both employees and "independent contractors," from the entirety of the continental United States.

72.    Based on the number of employees (and employees misclassified as independent contractors) and the national range of Defendant New Prime's business, the named Plaintiff therefore estimates that the class is made up of thousands of current and former employees (and former employees misclassified as independent contractors) of Defendant New Prime. The exact size of the class will be ascertainable from Defendant New Prime's records.

73.    There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include: whether Defendants paid their employees (and employees misclassified as independent contractors) at least minimum wage; whether Defendant New Prime improperly failed to pay their former employees (and former employees misclassified as independent contractors) all wages due upon their termination.

74.    The class claims asserted by the Plaintiff are typical of the claims of all of the potential class members. This is an uncomplicated case of unpaid wages that should be mathematically ascertainable from business and computer tracking records and the class claims are typical of those pursued by victims of these violations. A class action is

superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy.

75.    The named Plaintiff will fairly and adequately protect and represent the interests of each class. He was both an employee misclassified as an independent contractor of Defendant New Prime and a standard correctly classified employee of Defendant New Prime and was a victim of the same violations of law as other class members, i.e., the failure to compensate employees (and employees misclassified as independent contractors) with the statutory minimum wage for each hour of work.

76.    The named Plaintiff is represented by counsel experienced in wage and hour litigation and class actions.

77.    The prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential Class Members that would establish incompatible standards of conduct for Defendants.

78.    Each class member's claim is relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

79.    The Plaintiff is unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

80.     The Plaintiff is unaware of any pending litigation commenced by members of any of the classes concerning the instant controversy.

81.     It is desirable to concentrate this litigation in one forum.

82.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

83.     The contours of the class will be easily defined by reference to payroll documents Defendant New Prime was legally required to create and maintain, pursuant to FLSA and its regulations, including 29 C.F.R. § 516.2 along with truck log records and GPS data. Notice will be easily distributed as all members of the putative class are or were recently employed by Defendant New Prime, who was required to create and maintain records containing the mailing addresses of each such class member.

### CLAIMS FOR RELIEF

### COUNT I:
### BREACH OF THE FAIR LABOR STANDARDS ACT (FLSA)
### 28 U.S.C. §§ 201 ET SEQ

84.     The Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

85.     The named Plaintiff asserts this claim on behalf of himself and the 216(b) Class pursuant to 29 U.S.C. § 216(b).

86.     During all times relevant to this action, the named Plaintiff and all others similarly situated were employed by all Defendant as defined by 29 U.S.C. § 203(g).

87.    The Defendant failed to pay the Plaintiff and the 216(b) Class the statutory minimum wage for each hour of work.

88.    During all times relevant to this action, the named Plaintiff and all others similarly situated were employed by the Defendant in an "enterprise engaged in commerce or in the production of goods for commerce," as defined by 29 U.S.C. § 203(s)(1).

89.    During all times relevant to this action, the named Plaintiff and all others similarly situated were employed by the Defendant for handling and otherwise working on goods or materials that had been moved in or were produced for commerce by any person.

90.    The Defendant had annual gross revenues in excess of $500,000 and employed two or more persons, including the named Plaintiff, who handled and worked on materials which had been moved in interstate commerce.

91.    The Plaintiff and all others similarly situated are individually covered by the Fair Labor Standards Act because they engaged in commerce or in the production of goods for commerce.

92.    The Defendant failed to pay the Plaintiff and all others similarly situated the minimum wage required by the FLSA.

93.    The Plaintiff and the 216(b) Class are entitled to unpaid minimum wage, liquidated damages, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**COUNT II:**
**BREACH OF MISSOURI MINIMUM WAGE LAW, MO. REV. STAT. § 290**

94.    Plaintiff incorporates all previous paragraphs.

95.    The named Plaintiff asserts this claim on behalf of himself and the Minimum Wage Class.

96.    Plaintiff and those similarly situated are "employees" and Defendant New Prime is an "employer" as those terms are defined in Mo. Rev. Stat. § 290.500 et seq. (2014).

97.    Defendant New Prime, in violation of Mo. Rev. Stat. § 290.502 (2014), failed to compensate the named Plaintiff and those similarly at the statutory minimum wage for each hour worked in many workweeks.

98.    The PlaintifF and the Minimum Wage Class are entitled to unpaid minimum wage, liquidated damages, attorneys' fees and costs pursuant to Mo. Rev. Stat. § 290.527 (2014).

### COUNT III:

### BREACH OF CONTRACT OR UNJUST ENRICHMENT/QUASI-CONTRACT

99.    The Plaintiff incorporates all previous paragraphs.

100.    The Plaintiff asserts this claim on behalf of himself and all classes.

101.    The Defendant entered into an employment agreement with the named Plaintiff and those similarly situated.

102.    This agreement incorporated all applicable state and federal laws, including those setting a minimum wage in the several states.

103.    The wage term in the contract is illegal and void. It must be replaced in quantum meruit at the reasonable value of the Plaintiff's labor, or alternatively, at minimum wage.

104.    The Defendant breached this contract by failing to pay all wages due.

105.    The Defendant owes damages in law and equity, or alternatively, must be disgorged from his ill-gotten gains.

## COUNT IV:

## VIOLATIONS OF MAINE LABOR LAWS

106.    The Plaintiff incorporates all previous paragraphs.

107.    The Plaintiff asserts this claim individually.

108.    In the final period of employment, the Plaintiff was employed in Maine.

109.    He was not paid all wages due for this work.

110.    He was not paid the statutory minimum wage in every week including his final paycheck.

111.    He was not paid all wages due upon termination.

112.    Therefore, he is entitled to actual and liquidated damages, statutory interest, and costs under Me. Rev. Stat. Ann. tit. 26, §7-621-A, §7-626, §7-626-A, and §7-663 -§7-670.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury for all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter an order or orders:

a.      Certifying an opt-in class pursuant to the FLSA, 29 U.S.C. §§ 201 et seq.;

b.      That appropriate notice of this suit and the opportunity to opt into it be provided to all potential members of the 216(b) Class;

c.      Awarding the Plaintiff and the 216(b) Class unpaid minimum wage, pursuant to 29 U.S.C. §§ 206 and 216;

d.      Awarding the Plaintiff and the 216(b) Class costs and attorneys' fees pursuant to 29 U.S.C. § 216(b);

e.      That the court certify this as action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

f.      That appropriate notice of this suit be provided to all potential members of the Minimum Wage Class;

g.      Awarding the named Plaintiff and the Minimum Wage Class damages, liquidated damages and penalties pursuant to Missouri Statutes §§ 290.505 and 290.527 and any other statutory damages available to former employees under § 290.110 or otherwise;

h.      Awarding the named Plaintiff, the 216(b) Class and the Minimum Wage Class, punitive damages;

i.      Awarding the named Plaintiff and the Minimum Wage Class, damages for the breach of contract or unjust enrichment;

j.      Awarding the Plaintiff actual and liquidated damages, statutory interest, and costs under M.R.S. Title 26 §§ 621, 626, 626A, and 664-70; and

k.      Granting such other relief as this Court deems just and proper.

                        Respectfully Submitted,

                        ___/s/ Andrew S. Schmidt___
                        Andrew S. Schmidt, Esq.
                        Admitted *pro hac vice*
                        Andrew Schmidt Law, PLLC
                        97 India Street
                        Portland, ME 04101
                        207-650-0320
                        andy@maineworkerjustice.com

                        Dated: July 6, 2015

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

JUDITH A. LEGGETT (BBO #635346)
Englander, Leggett & Chicoine, PC
44 School Street, Suite 800
Boston, MA  02108
(617) 723-7440
Fax No.: (617) 723-8849
jaleggett@elcpc.com

JILL M. BORGONZI (BBO #665287)
JAMES C. SULLIVAN (MO #38318)
ROBERT J. HINGULA  (MO #56353)
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000
Fax No.: (816) 753-1536
jborgonzi@polsinelli.com
jsullivan@polsinelli.com
rhingula@polsinelli.com

_____/s/ Andrew Schmidt_____