UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
DOMINIC OLIVEIRA,                      )
                        Plaintiff      )
                                       )
v.                                     )        Civil Action
                                       )        No. 15-10603-PBS
                                       )
NEW PRIME, INC.,                       )
                                       )
                        Defendant.     )
_____)

**MEMORANDUM AND ORDER**

October 26, 2015

Saris, C.J.

**INTRODUCTION**

This case involves a labor dispute between a trucking corporation and a former truck driver. In March 2015, the plaintiff Dominic Oliveira brought this proposed class action alleging that the defendant New Prime, Inc. violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq., and Missouri and Maine labor laws, by failing to pay its truck drivers minimum wage (Docket Nos. 1, 33). New Prime moved to compel arbitration under § 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4, and two operating agreements signed by Oliveira on behalf of Hallmark Trucking LLC, both of which contain an arbitration clause (Docket No. 35). Oliveira argues that the Court must determine whether the operating agreements

1

are exempt from arbitration under § 1 of the FAA before it can consider New Prime's motion to compel arbitration (Docket No. 40). New Prime maintains that the exemption's application is a threshold question of arbitrability that the parties delegated to the arbitrator in the operating agreements (Docket No. 51). After hearing, I agree that it is for the Court, and not the arbitrator, to decide whether the § 1 exemption applies before considering the motion. The motion to compel arbitration is therefore **DENIED** without prejudice.[1]

### FACTUAL BACKGROUND

The following facts are taken from the First Amended Complaint (Docket No. 33) and the operating agreements referenced by all parties (Docket No. 36, Ex. A, Ex. B). In March 2013, Plaintiff Dominic Oliveira entered Defendant New Prime's "Paid Apprenticeship" training program, which is advertised as an on-the-job training program for new truck drivers. Docket No. 33, Ex. 2, Ex. 3. Apprentices first obtain a Missouri Commercial Driver's License (CDL) permit. They next

---

[1] Alternatively, New Prime argues that the Court should dismiss the case for improper venue because the arbitration clause states that arbitration is to take place in Missouri. If the case remains in this Court and moves forward, New Prime moves to dismiss Oliveira's breach of contract/unjust enrichment claim (Count 3), arguing that it is preempted by the FLSA and the Federal Aviation Administration Authorization Act. The Court will not address these issues until the threshold issue of exemption is resolved.

shadow New Prime drivers for three to four weeks and drive 10,000 miles under supervision. During this time, apprentices receive an advance of $200 per week, which is subtracted from their future earnings, but otherwise receive no remuneration. As a result, apprentices are essentially free labor while they train with New Prime. Under Department of Transportation regulations, trucks can be on the road for longer periods of time when a New Prime driver switches off with an apprentice.

After completion of this on-the-road instruction, apprentices take a CDL exam and then work as a "B2" company driver trainee for 30,000 miles. During this period, the trainees earn fourteen cents per mile driven, but are not paid for time spent loading and unloading cargo or protecting company property. The company also regularly deducts money from paychecks, including the $200 weekly advance from the apprenticeship program. As a result of these deductions, Oliveira received approximately $440-$480 per week for driving 5,000-6,000 miles, which equates to about $4/hour while driving.

Finally, after completing the 30,000 miles as a B2 company driver trainee, the truck drivers complete additional orientation classes, which last for about a week. They are then classified as either company drivers or independent contractors. The truck drivers are not paid for the time spent in the

orientation classes, and receive a $100 bonus if they opt to become independent contractors.

In May 2013, when Oliveira returned from his trainee driving, New Prime told Oliveira that he could make more money if he became an independent contractor. New Prime directed him to a company called Abacus Accounting, which was located on the second floor of New Prime's building. Abacus Accounting told Oliveira to provide suggested names for a limited liability company (LLC), and then created Hallmark Trucking LLC on his behalf. New Prime also directed Oliveira to Success Leasing, a closely related corporation to New Prime, to select a truck.

At Success Leasing, Oliveira was given several documents to sign. One of these documents was titled "INDEPENDENT CONTRACTOR OPERATING AGREEMENT," which repeatedly states that the intent of the agreement is to establish an independent contractor relationship between New Prime and Hallmark Trucking LLC. Docket No. 36, Ex. A, at 1, 9. The agreement also contains the following arbitration clause:

> GOVERNING LAW AND ARBITRATION. THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF MISSOURI. ANY DISPUTES ARISING UNDER, ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING AN ALLEGATION OF BREACH THEREOF, AND ANY DISPUTES ARISING OUT OF OR RELATING TO THE RELATIONSHIP CREATED BY THE AGREEMENT, AND ANY DISPUTES AS TO THE RIGHTS AND OBLIGATIONS OF THE PARTIES, INCLUDING THE ARBITRABILITY OF DISPUTES BETWEEN THE PARTIES, SHALL BE FULLY RESOLVED BY ARBITRATION IN ACCORDANCE WITH MISSOURI'S ARBITRATION ACT AND/OR THE FEDERAL ARBITRATION ACT . . . THE PARTIES SPECIFICALLY AGREE

>THAT NO DISPUTE MAY BE JOINED WITH THE DISPUTE OF ANOTHER AND AGREE THAT CLASS ACTIONS UNDER THIS ARBITRATION PROVISION ARE PROHIBITED . . . THE PLACE OF THE ARBITRATION HEREIN SHALL BE SPRINGFIELD, MISSOURI.

Id. at 10. Oliveira "felt pressure" to sign quickly because New Prime had a load waiting for him outside. Docket No. 33, ¶ 45. Success Leasing then instructed Oliveira to go to the New Prime company store to purchase security locks, fuel, insurance, and other tools of the trade. These items totaled roughly $5,000, which New Prime then deducted from his paycheck at a rate of $75 per week.

Although New Prime labeled Oliveira an independent contractor in the operating agreement, his role as a truck driver for New Prime did not change from his time as an apprentice and trainee driver. New Prime continued to directly and indirectly control Oliveira's scheduling, vacations, and time at home by requiring him to take specific training courses and follow certain procedures. These courses and procedures limited which shipments he could take and made it difficult, if not impossible, for him to work for other trucking or shipping companies. In particular, New Prime dispatched drivers through a "QUALCOMM system" that was not adaptable to other carriers. Docket No. 33, ¶ 51.[2]

---

[2] The parties have not explained what the "QUALCOMM system" is or how it works.

Meanwhile, New Prime continued to make regular deductions from Oliveira's paycheck, ostensibly because of lease payments on the truck and payments for the other tools that New Prime instructed him to buy. On several occasions, his weekly pay was negative after spending dozens of hours on the road. In March 2014, Oliveira signed a second contract titled "INDEPENDENT CONTRACTOR OPERATING AGREEMENT" on behalf of Hallmark Trucking LLC, which contains an identical arbitration clause to that in the first agreement. Docket No. 36, Ex. B, at 1, 9-10. The second contract also repeatedly states that the agreement establishes an independent contractor relationship between New Prime and Hallmark Trucking LLC.

Oliveira terminated his contract with New Prime in September 2014. The next month, however, New Prime rehired him as a company driver on the condition that New Prime would continue deducting money from his paychecks to repay an alleged debt to Success Leasing. With these deductions, Oliveira again was paid below the minimum wage. He now brings this class action, arguing that he and other New Prime drivers were not paid the minimum wage under federal and state law.

**DISCUSSION**

## I.   <u>Statutory Framework</u>

Congress enacted the FAA in 1925 in "response to hostility of American courts to the enforcement of arbitration agreements,

a judicial disposition inherited from then-longstanding English practice." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). To give effect to this purpose, § 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Circuit City, 532 U.S. at 111. In short, § 2 "is a congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991). "At a minimum, this policy requires that ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010) (internal quotation marks and alterations omitted).

The Act provides two mechanisms through which federal courts may enforce § 2's liberal policy favoring arbitration. See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010). Section 3 instructs district courts to stay the trial of an action "upon any issue referable to arbitration under an agreement in writing for such arbitration" once the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3.

Section 4 allows any party "aggrieved" by the failure of another party "to arbitrate under a written agreement for arbitration" to petition a district court for "an order directing that such arbitration proceed in the manner provided for in such agreement." Id. § 4. The district court "shall" order arbitration upon being satisfied that "the making of the agreement for arbitration or the failure to comply therewith is not in issue." Id.

Despite the FAA's broad purpose and strong language, the Act does not extend to all arbitration agreements. Section 2 limits its application to contracts "evidencing a transaction involving commerce," or arising from a "maritime transaction." 9 U.S.C. § 2. More importantly for purposes of the present dispute, § 1, titled "exceptions to operation of title," states "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Id. § 1. Section 1 thus exempts "contracts of employment of transportation workers" from the FAA entirely. Circuit City, 532 U.S. at 119. Employment contracts involving truck drivers fall within the transportation worker exception. See, e.g., Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351 (8th Cir. 2005) (holding that a truck driver, but not a customer service representative, is a transportation worker under § 1); Harden v. Roadway Package Sys., Inc., 249

F.3d 1137, 1140 (9th Cir. 2001) (holding that a truck driver was exempt from the FAA under § 1); Am. Postal Workers Union v. United States Postal Serv., 823 F.2d 466, 473 (11th Cir. 1987) (noting that courts have limited the § 1 exemption to "workers actually engaged in interstate commerce, including bus drivers and truck drivers" (internal quotation marks omitted)).

The FAA does not define the term "contract of employment." See 9 U.S.C. § 1. Although neither the Supreme Court nor the First Circuit has directly addressed the issue, courts generally agree that the § 1 exemption does not extend to independent contractors. See, e.g., Carney v. JNJ Express, Inc., 10 F. Supp. 3d 848, 852-53 (W.D. Tenn. 2014) ("If the [plaintiffs] are independent contractors, their claims are arbitrable under the FAA."); Villalpando v. Transguard Ins. Co. of Am., 17 F. Supp. 3d 969, 982 (N.D. Cal. 2014) (same); Port Drivers Fed'n 18, Inc. v. All Saints, 757 F. Supp. 2d 463, 472 (D.N.J. 2011) (same); Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co., 288 F. Supp. 2d 1033, 1035-36 (D. Ariz. 2003) (same). This construction comports well with "the FAA's purpose of overcoming judicial hostility to arbitration," and the Supreme Court's instruction "that the § 1 exclusion provision be afforded a narrow construction" in light of that purpose. Circuit City, 532 U.S. at 118 (holding that § 1 only exempts employment contracts of

transportation workers from the FAA's reach, not all employment contracts).[3]

## II. **Analysis**

Oliveira's relationship with New Prime can be divided into three periods of time: (1) March 2013 to May 2013, when Oliveira worked for New Prime through the apprenticeship program and as a B2 company driver trainee; (2) May 2013 to September 2014, when Oliveira worked for New Prime under the two operating agreements; and (3) post-October 2014, when New Prime rehired Oliveira as a company driver.[4] Under the statutory framework discussed above, the FAA's application to the present case hinges on whether Oliveira had a contract of employment or an independent contractor relationship with New Prime—and thus falls within or outside the § 1 transportation worker exemption—during each of these three time periods. New Prime appears to concede that Oliveira was an employee in the first and third time periods, and instead argues that the arbitration clause in the operating agreements should extend retroactively and prospectively to cover these intervals.

More specifically, New Prime maintains that Oliveira's claims from his time as an "employee driver" before signing the

---

[3] The parties do not dispute that Oliveira was a transportation worker under § 1.
[4] The parties do not specify when Oliveira's relationship with New Prime ended permanently.

operating agreements, and after he was rehired as a company driver, fall within the scope of the arbitration clause for two reasons. Docket No. 51, at 7. First, Oliveira's "allegations related to his time as an employee are inextricably related to his decision to become an independent contractor and enter into the Agreements." Id. Next, New Prime contends that the arbitration clause "is very broad and clearly applies to 'any disputes as to the rights and obligations of the parties.'" Id. (quoting Docket No. 36, Ex. A, at 10, Ex. B, at 9-10). New Prime cites to Kristian v. Comcast Corp., 446 F.3d 25, 33-35 (1st Cir. 2006) for the proposition that an arbitration agreement can be applied retroactively if broadly phrased to include claims or disputes that arose prior to signing the agreement.[5]

At this stage in the proceeding, these arguments fail, because they do not address the applicability of the § 1 transportation worker exemption. If Oliveira was an employee in the first and third time periods, then the § 1 exemption applies and the Court cannot order the parties to arbitrate any claims that arose before Oliveira signed the operating agreements or after New Prime rehired Oliveira as a company driver in October 2014. That said, the parties dispute whether Oliveira was an

---

[5] New Prime does not cite, and the Court is not aware of, any cases in which a court applied an arbitration agreement to claims arising after termination of the contract containing the arbitration clause.

employee or independent contractor during at least the second time period, and whether it is for the Court or the arbitrator to decide the threshold question of the FAA's applicability.

### A. Gateway Questions of Arbitrability

The Supreme Court has repeatedly emphasized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-43 (1995); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Parties can agree to allow arbitrators decide "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, 561 U.S. at 68-69 (internal quotation marks and alterations omitted). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 69. An agreement granting the arbitrator authority to decide threshold questions of arbitrability is generally referred to as a "delegation provision." See id. at 68.

Questions of arbitrability, however, are an exception to the federal policy favoring arbitration agreements. Howsam, 537 U.S. at 83; Kristian, 446 F.3d at 37-38. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." First Options, 514 U.S. at 944 (internal quotation marks and alterations omitted); see also Howsam, 537 U.S. at 83 ("The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, *the question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." (internal quotation marks and alterations omitted)). In short, courts must enforce valid delegation provisions under the FAA, but courts scrutinize delegation clauses more closely to ensure the parties manifested a clear intent to delegate questions of arbitrability to the arbitrator.

Here, the parties do not contest that the two operating agreements Oliveira signed on behalf of Hallmark Trucking LLC contain valid delegation provisions. The contracts' arbitration clauses state in relevant part: "ANY DISPUTES AS TO THE RIGHTS AND OBLIGATIONS OF THE PARTIES, INCLUDING THE ARBITRABILITY OF DISPUTES BETWEEN THE PARTIES, SHALL BE FULLY RESOLVED BY ARBITRATION . . ." Docket No. 36, Ex. A, at 10, Ex. B, at 9-10 (emphasis added). Furthermore, as New Prime emphasizes, the

13

arbitration clauses also incorporate the Commercial Arbitration
Rules of the American Arbitration Association (AAA). Id. Ex. A,
at 10, Ex. B, at 9-10 ("ANY ARBITRATION BETWEEN THE PARTIES WILL
BE GOVERNED BY THE COMMERCIAL ABRITRATION RULES OF THE AMERICAN
ARBITRATION ASSOCIATION."). The Rules provide that "[t]he
arbitrator shall have the power to rule on his or her own
jurisdiction, including any objections with respect to the
existence, scope, or validity of the arbitration agreement or to
the arbitrability of any claim or counterclaim." Am. Arbitration
Ass'n Commercial Arbitration R. & Mediation P. R-7(a). Thus, the
parties have agreed to arbitrate gateway questions of
arbitrability.

Oliveira argues that the arbitration clauses, including the
delegation provisions, should not be enforced because the
operating agreements are substantively and procedurally
unconscionable. This argument fails, however, because Oliveira
seeks to invalidate the contracts as a whole rather than the
delegation provisions, or even the arbitration clauses,
specifically. See Rent-A-Center, 561 U.S. at 72 ("Accordingly,
unless Jackson challenged the delegation provision specifically,
we must treat it as valid under § 2, and must enforce it under
§§ 3 and 4, leaving any challenge to the validity of the
Agreement as a whole for the arbitrator."); Buckeye Check
Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) ("[A]

14

challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

## B. Applicability of the Transportation Worker Exemption

The delegation provisions and the AAA Rules do not resolve this matter, because they cannot, and do not, address whether the applicability of the § 1 transportation worker exemption is a question of arbitrability that parties can legally delegate to an arbitral forum in the first place. New Prime argues that the exemption's application is merely a gateway question of arbitrability that the parties delegated to the arbitrator. Oliveira maintains that "questions regarding statutory exemptions to arbitration agreements" under the FAA, including the § 1 exemption, are not questions of arbitrability at all, but a threshold matter that courts must resolve before considering a motion to compel. Docket No. 40, at 3.

Neither the First Circuit nor Supreme Court has answered the central question in this case: does a district court have to determine the applicability of the FAA § 1 exemption itself, or is the exemption issue just another gateway question of arbitrability that contracting parties may validly delegate to an arbitrator? The Ninth Circuit has held that the "district court must make an antecedent determination that a contract is arbitrable under Section 1 of the FAA before ordering

15

arbitration pursuant to Section 4." In re Van Dusen, 654 F.3d 838, 843 (9th Cir. 2011). Meanwhile, the Eighth Circuit has adopted the opposite viewpoint: it characterizes the applicability of the § 1 exemption as a "threshold question of arbitrability" that parties "can agree to have arbitrators decide." Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769 (8th Cir. 2011). This Court finds the Ninth Circuit's analysis more persuasive and adopts its approach for the reasons that follow.

In Green v. SuperShuttle International, Inc., current and former airport shuttle bus drivers brought suit against SuperShuttle "alleging violations of the Minnesota Fair Labor Standards Act (MFLSA) arising from SuperShuttle's alleged misclassification of its drivers as franchisees rather than employees." Id. at 767. The bus drivers had all signed the same franchise agreement that contained both an arbitration clause and a delegation provision. Id. at 768. When SuperShuttle moved to compel arbitration under the agreement and § 4 of the FAA, Green—on behalf of all the drivers—argued that "the district court lacked jurisdiction to compel arbitration because the FAA exempts transportation workers." Id. at 768-69.

The Eight Circuit held that the application of the § 1 transportation worker exemption "is a threshold question of arbitrability in the dispute between Green and SuperShuttle."

16

Id. at 769. The court emphasized that the franchise agreements "specifically incorporated the Rules of the American Arbitration Association (AAA)," which "provide that an arbitrator has the power to determine his or her own jurisdiction over a controversy between the parties." Id. at 769. The court concluded that by incorporating the AAA Rules, "the parties agreed to allow the arbitrator determine threshold questions of arbitrability," and "thus the district court did not err in granting the motion to compel arbitration." Id.

In contrast, when faced with an analogous scenario, the Ninth Circuit analyzed whether the district court must assess the applicability of the § 1 exemption before ordering arbitration in detail. In In re Van Dusen, two interstate truck drivers entered "independent contractor operating agreements" with Swift Transportation Company. 654 F.3d at 840. The agreements contained both an arbitration clause and a delegation provision. Id. at 840-42. Despite these provisions, the plaintiffs filed suit against Swift and Interstate Equipment Leasing, Company in federal district court alleging violations of the FLSA and of California and New York labor laws. Id.

The In re Van Dusen defendants moved to compel arbitration pursuant to the arbitration clauses in the operating agreements, and the plaintiffs retorted that the contracts were exempt from arbitration under § 1 of the FAA. Id. The district court

17

"declined to rule on the applicability of the exemption, holding that the question of whether an employer/employee relationship existed between the parties was a question for the arbitrator to decide in the first instance." Id. After the district court denied certification for an interlocutory appeal, the plaintiffs sought mandamus relief from the Ninth Circuit. Id.

The Ninth Circuit held[6] that the applicability of the § 1 transportation worker exemption is not a question of arbitrability that the parties may delegate to an arbitrator. Id. at 843-45. The court explained that because a "district court's authority to compel arbitration arises under Section 4 of the FAA," a district court "has no authority to compel arbitration under Section 4 where Section 1 exempts the underlying contract from the FAA's provisions." Id. at 843. "Section 4 has simply no applicability where Section 1 exempts a contract from the FAA, and private parties cannot, through the insertion of a delegation clause, confer authority upon a district court that Congress chose to withhold." Id. at 844. The court emphasized that "whatever the contracting parties may or may not have agreed upon is a distinct inquiry from whether the

---

[6] Actually, the Ninth Circuit denied mandamus because the district court's decision was not clearly erroneous under the stringent standard for a writ of mandamus. Id. at 845-46.

FAA confers authority on the district court to compel arbitration." Id.

As the Ninth Circuit highlighted, its holding is consistent with the Supreme Court's decision in Bernhardt v. Polygraphic Co. of America, 350 U.S. 198 (1956). See In re Van Dusen, 654 F.3d at 844 (citing Bernhardt, 350 U.S. at 201-02). In Bernhardt, the Supreme Court held that a district court lacked authority to stay litigation pending arbitration under § 3 of the FAA where the underlying contract containing the arbitration agreement did not evidence a "transaction involving commerce" within §§ 1 and 2 of the Act. Bernhardt, 350 U.S. at 201-02. The In re Van Dusen court concluded that this reasoning regarding the relationship between Sections 1, 2, and 3 of the Act "applies with equal force in interpreting the relationship between Sections 1, 2, and 4 of the FAA." In re Van Dusen, 654 F.3d at 844. Based on this analysis, this Court holds that the question of whether the § 1 exemption applies is for the Court, and not the arbitrator, to decide.

New Prime argues that the arbitrator must decide whether the § 1 exemption applies because otherwise the Court would address the merits of the underlying dispute. More specifically, New Prime maintains that "the issue of whether the Plaintiff was an independent contractor or an employee is plainly entangled in the merits of Plaintiff's underlying claims arising out of his

alleged misclassification." Docket No. 51, at 6. On a second appeal in the <u>Van Dusen</u> case,[7] the Ninth Circuit rejected a similar argument, stressing that its prior opinion "expressly held that a district court must determine whether an agreement for arbitration is exempt from arbitration under § 1 of the [FAA] as a threshold matter." <u>Id.</u> The Ninth Circuit directed the district court to "determine whether the Contractor Agreements between each appellant and Swift are exempt under § 1 of the FAA" before considering Swift's motion to compel on remand. <u>Id.</u> Thus, this Court must keep on trucking in the present case to determine whether the two operating agreements Oliveira signed on behalf of Hallmark Trucking LLC are contracts of employment within the § 1 exemption.

**ORDER**

The defendant's motion to compel arbitration and stay proceedings, and/or dismiss the case for improper venue, or, in the alternative, to dismiss Count III for failure to state a claim (Docket No. 35) is **DENIED** without prejudice. The parties

---

[7] After the Ninth Circuit denied the writ of mandamus, the plaintiffs moved "for reconsideration of the grant of Swift Transportation Co. Inc.'s motion to compel arbitration." <u>Van Dusen v. Swift Transp. Co., Inc.,</u> 544 Fed. App'x 724, 724. The district court denied the motion for reconsideration, but certified a request for an interlocutory appeal. <u>Van Dusen v. Swift Transp. Co.,</u> No. 2:10-CV-00899 JWS, 2011 WL 3924831, at *3 (D. Ariz. Sept. 7, 2011).

may conduct factual discovery on the threshold question of the plaintiff's status as an employee or independent contractor until January 8, 2016. Any motions for summary judgment shall be filed by January 22, 2016.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge