**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

| | | |
|---|---|---|
| | ) | |
| DOMINIC OLIVEIRA, | ) | |
| on his own behalf and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:15-cv-10603-PBS |
| v. | ) | |
| | ) | |
| NEW PRIME INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| ROCKY L. HAWORTH, | ) | |
| on his own behalf and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:20-cv-11584-PBS |
| v. | ) | |
| | ) | |
| NEW PRIME INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFFS' PRELIMINARY[1] PETITION FOR ATTORNEYS' FEES AND COSTS

The Court granted preliminary approval of the proposed class and collective action settlement in this case on July 23, 2020. ECF Dkt. No. 255. Notice subsequently went out to approximately 40,000 individuals who were eligible to participate in the settlement. The deadline to submit a claim form to participate in the case is December 7, 2020, and the Court has scheduled a final settlement approval hearing to take place on January 13, 2021, at 2:30 p.m.

---

[1] Plaintiffs will file an updated petition with the final settlement approval motion in January 2021.

1

Plaintiffs file this preliminary petition for attorneys' fees and costs pursuant to Rule 23(h) of the Federal Rule of Civil Procedure.  The notice to class members informed them: "Class Counsel intends to file a motion for attorneys' fees and costs by November 23, 2020.  If you would like to receive a copy of that motion, please contact Class Counsel (contact information in Section 10 below) after that date."  *See* https://www.primetruckingsettlement.com/faq.

This motion contains currently available information about Plaintiffs' counsel's fees and costs.  The motion for final settlement approval will contain updated information, as well as information about the settlement claim rate, etc.

Plaintiffs' counsel seek an award of attorneys' fees of $9,240,000, which is 33% of the settlement fund.  Additionally, Plaintiffs' counsel seek costs up to $225,000, including the costs of settlement administration.  This award is fair and reasonable.  It is commensurate with awards in other similar cases and properly recognizes the substantial relief obtained for the class members, the significant work expended by the attorneys over the past five years, and the myriad risks that the attorneys took on in bringing these cases.

## ARGUMENT

## I.    THE PROPOSED ATTORNEYS' FEE AWARD IS REASONABLE.

Courts in the First Circuit typically award attorneys' fees in class action settlements as a percentage of a common fund.  *See In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir.1995).  The First Circuit recognized in *Thirteen Appeals* that there are "distinct advantages" of the percentage of

the fund method (as opposed to a lodestar method), namely that it is "often less burdensome to administer than the lodestar method," it "enhances efficiency," it is "result-oriented," etc. *Id.* at 307. The fundamental question for the Court in analyzing an attorneys' fee request is whether the requested award is "reasonable." *Id.* at 305.

As this Court has previously observed, "[i]n weighing a common fund request, courts generally consider the so-called *Goldberger* factors," which are: "'(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.'" *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *In re Lupron Mktg. & Sales Practices Litig.,* 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir.2000)).

Application of the *Goldberger* factors supports the fee award requested by Plaintiffs' counsel.

**1.    The size of the fund and the number of persons benefitted.**

The total settlement fund is up to $28,000,000. Out of that amount, $14,000,000 is non-reversionary, meaning that it will be distributed in full, regardless of how many class members submit claims, and $14,000,000 will be distributed based on the percentage of claims. Schwab Aff. ¶ 2. Though the total amount to be distributed and range of awards will not be known until the close of the claim period, the minimum payment to class members is $100, and thousands of class members will be eligible to

receive payments of $1,000 or more.  Schwab Aff. ¶ 3.  It is also worth noting that the

settlement payments are real money, going to real people—not coupons, discounts, or

credits, the value of which may be difficult to estimate.  *See, e.g.*, Manual for Complex

Litig., 4th, Fed. Judiciary Center 2004, § 14.121 ("where the common benefits are in the

form of discounts, coupons, options, or declaratory or injunctive relief, estimates of the

value or even the existence of a common fund may be unreliable").

Moreover, in addition to this monetary relief, the settlement includes significant

non-monetary relief.  First, Prime has agreed to a release of monies that it asserts that

class members owe to Prime and has agreed not to seek those monies from the drivers

in post-employment collection efforts (including both internal collection efforts, wage

deductions, and collection efforts by third-party collection companies).  For employee

drivers, Prime has agreed to release entitlement to those monies regardless of whether

the drivers submit claim forms to participate in the settlement.  This non-monetary

relief potentially impacts over 22,000 members of the class, whether or not they submit

claim forms.  Schwab Aff. ¶ 4.

Second, Prime has also agreed to a release of monies that it asserts that

independent contractor drivers owe to Prime and has agreed not to seek those monies

from the drivers in post-employment collection efforts (including both internal

collection efforts, wage deductions, and collection efforts by third-party collection

companies), as long as the drivers submit claim forms and have not allegedly

destroyed, damaged, or stolen Prime's property.[2]  Approximately 18,000 class members

---

[2]      The parties have agreed to an extensive process for determining whether or not Prime alleges that
a driver has destroyed, damaged, or stolen Prime's property, including an opportunity to cure and an

have the opportunity to receive this non-monetary relief if they submit claims.  Schwab
Aff. ¶ 5.

For all individuals for whom Prime has agreed to release entitlement to monies
(described above), Prime has also agreed to the following upon final approval of the
settlement:

- After final approval of the settlement, Prime will use its best efforts to request
  that the national credit reporting agencies (Experian, Equifax and TransUnion)
  delete any reporting of the trade line(s) with respect to the drivers' accounts with
  Prime in connection with the purported debts released;

- If a driver requests by letter to HireRight that records of a default to Prime
  and/or related entities be corrected in accordance with the release of Prime's
  entitlement to monies, and to the fullest extent permitted by law, Prime agrees to
  provide a timely letter to HireRight with a copy to the requesting driver that any
  defaults owing to Prime and/or related entities have been rescinded by mutual
  agreement; and

- Prime and related entities shall give no new or additional negative references to
  any driver for having allegedly defaulted on any amounts released.

Schwab Aff. ¶ 6.

This significant non-monetary relief does at least three important things for
class members.  First, it relieves them of the obligation to pay monies to Prime, which

---

opportunity for the driver to challenge Prime's assertion, which challenge shall be decided by the
Settlement Administrator in the first instance and ultimately, if the challenge is not capable of resolution
by the Settlement Administrator, by binding arbitration before a private arbitrator.  Schwab Aff. ¶ 5.

benefits them economically.  Second, it alleviates the negative credit that may have

flowed from their purported unpaid debts to Prime.  Third, it removes barriers for class

members to get other jobs in the trucking industry, by ensuring that drivers do not get

negative employment references from Prime because of purported debt owed.  As this

Court has noted, "the public has a strong interest in facilitating the full employment of

trained truck drivers during the present public health crisis."  *Montoya v. CRST*

*Expedited, Inc.*, 2020 WL 2850235, at *2 (D. Mass. Jun. 2, 2020).

      In other words, the non-monetary relief afforded by this settlement puts the class

members in a significantly better economic and financial position than they were in

before the settlement.  The potential value of removing debt, improving credit, and

opening up new career opportunities is boundless.  This is particularly true now, in

light of the economic hardships that many people are suffering from due to the

COVID19 pandemic.  *See, e.g., Montoya v. CRST Expedited, Inc.*, 2020 WL 2850235, at *1

(D. Mass. Jun. 2, 2020) (enjoining company's debt collection practices because, *inter alia*,

"[t]hese harms to class members are immediate and ongoing and carry particular

weight during the present period of national economic strain").

      Courts recognize that "[t]he fact that counsel obtained injunctive relief in

addition to monetary relief for their clients is . . . a relevant circumstance to consider in

determining what percentage of the fund is reasonable as fees."  *Staton v. Boeing Co.*, 327

F.3d 938, 946 (9th Cir. 2003); *see also Stevens v. SEI Investments Co.*, 2020 WL 996418, at

*10 (E.D. Pa. Feb. 28, 2020) ("non-monetary benefit" from settlement "supports approval

of the requested fee").  Here, the size of the fund—which will afford real monetary

relief to thousands of class members—plus the significant non-monetary relief, in the form of debt relief, improved credit, and removal of barriers to employment in the trucking industry, support the requested fee award.

**2.     The skill, experience, and efficiency of the attorneys involved.**

Plaintiffs' counsel has brought decades of expertise in class action litigation to this case.  As set forth in the attached Affidavit of Hillary Schwab, Esq., all of plaintiffs' attorneys have extensive experience representing workers in wage and hour class actions.  Schwab Aff. ¶¶ 7-10.  This Court has appointed Hillary Schwab, Esq. and Rachel Smit, Esq. of Fair Work, P.C. as class counsel in another nationwide wage and hour class action involving truck drivers and raising similar claims to this case. *Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411 (D. Mass. 2018).

Moreover, while several firms have worked on the case, they have worked cooperatively to ensure that the case is tried as efficiently as possible.  Public Justice, for example, was retained to work on the appeals to the First Circuit and the United States Supreme Court, while Fair Work, P.C. has been lead counsel at the trial level on the *Oliveira* case, working on pleadings and discovery (with the assistance of Andrew Schmidt Law PLLC), class certification, settlement negotiations, class settlement administration, etc.  Schwab Aff. ¶ 11.

The Crimmins Law Firm and the Hodes Law Firm initially initiated a separate and parallel case in the United States District Court for the Western District of Missouri. However, once it was determined that the cases overlapped, the attorneys quickly reached an agreement to work cooperatively so that their efforts would not be

duplicative and to ensure that the class had the best representation possible. With Fair Work, the Crimmins Law Firm and the Hodes Law Firm have focused on representing the B-seat and C-seat trainee drivers. Schwab Aff. ¶ 12.

This factor supports the requested fee award.

### 3.     The complexity and duration of the litigation.

As numerous courts have observed, "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts." *Brumley v. Camin Cargo Control, Inc.*, Civ. A. No. 08-1798, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012). Moreover, in the wage and hour context, it does not get much longer or more complex than this case. The case was originally filed in 2015. It has been fought heavily over more than five years, including an appeal to the First Circuit, a fully briefed petition for certiorari to the United States Supreme Court, and ultimately full briefing and argument to the Supreme Court. Moreover, the case was not simply settled after the Supreme Court's decision in Plaintiffs' favor on the arbitration issue. The parties continued to litigate extensively over another year and a half, including full-blown discovery, as well as substantive briefing and argument on class and collective certification and Prime's motion to compel arbitration under Missouri law, etc. The *Haworth* case was hard-fought as well, with thorough discovery, and briefing, argument, and decisions favorable to Plaintiffs on Plaintiffs' motion for conditional certification under the FLSA and Defendant's motion for a stay of the case, *see Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060 (W.D. Mo. 2020), and with

8

Defendant's withdrawal of its motion to compel arbitration after briefing.  Schwab Aff. ¶ 13.

Even after the parties reached a settlement, Plaintiffs' counsel has continued to advocate aggressively on behalf of the class.  After a supervisor for Prime sent out an email that interfered with the notice process, Plaintiffs' counsel swiftly filed an emergency motion for corrective notice with the Court, obtaining substantial relief designed to ensure that class members received accurate information about the settlement.  *See* ECF Dkt. Nos. 265, 271.

It should be noted that the Supreme Court decision in this case, *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532 (2019), was a landmark decision on the application of the Federal Arbitration Act to truck drivers.  The decision has been cited by courts around the country in dozens of cases since it was issued in January 2019, resolving a key issue in many of those cases.  *See, e.g., Wallace v. Grubhub Holdings Inc.*, No. 18 C 4538, 2019 WL 1399986, at *2 (N.D. Ill. Mar. 28, 2019) ( "After briefing closed, the Supreme Court issued its opinion in *New Prime Inc. v. Oliveira*, and definitively settled the matter when it held that a court—rather than an arbitrator—must determine whether § 1 applies before the court may compel arbitration."); *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 913 (N.D. Cal. 2020) (Court "settled" two issues relating to FAA transportation worked exemption in Oliveira—that applicability of 9 U.S.C. § 1 is for court to decide and that § 1's exemption for "contracts of employment" includes contracts with individuals classified as independent contractors).  This Court issued an impactful decision in this case as well in December 2019, holding that Prime had waived its right to arbitrate claims under the

Missouri Uniform Arbitration Act, as did the District Court for the Western District of Missouri in the *Haworth* matter in 2020, in conditionally certifying a collective action of B/C Seat drivers and authorizing the issuance of notice. *Oliveira v. New Prime, Inc.*, 424 F. Supp. 3d 206 (D. Mass. 2019); *Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060 (W.D. Mo. 2020).

In other cases involving novel legal issues and/or extensive interlocutory appeals, courts have held that significant fee awards are warranted. In *Erie County Retirees Association v. County of Erie, Pennsylvania*, for example, the court noted that "[t]he novelty of the central issue . . . required substantial research and preparation at the summary judgment stage and ultimately, required appellate work before the United States Court of Appeals for the Third Circuit and the United States Supreme Court." 192 F. Supp. 2d 369, 380 (W.D. Pa. 2002). The court therefore held that this factor "weighs in favor of a fee award above the percentage that is typically awarded in common fund cases." *Id.* (granting attorneys' fees of 38% of common fund); *see also In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) (noting that "[t]he has been vigorously contested from its inception, as evidenced by the number of decisions that have issued from this court and the Court of Appeals addressing matters of jurisdiction, discovery, privilege, class certification, and substantive law" and awarding requested fee award).

The length of this case and the complexity and depth of the issues involved support the requested fee award.

4.      **The risks of the litigation.**

"Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award."   *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000)).

The risks in this case were significant.  Almost by definition, a case that goes to the Supreme Court has high stakes and involves an issue that is in enough dispute for the Court to accept it on certiorari.  This is particularly true with a case involving arbitration, which has been a highly contentious issue, resulting in numerous significant decisions out of the United States Supreme Court in the past decade alone. *See, e.g., Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).  Courts have noted that the arbitration issue creates significant risks in class action litigation. *See, e.g., Doe 1-2 v. Deja Vu Services, Inc.*, 2017 WL 2629101, at *5 (E.D. Mich. Jun. 19, 2017) (arbitration issue "add[ed] a large measure of uncertainty to continued litigation," supporting class action settlement).

Here, moreover, the issue that sent this case to the Supreme Court was a preliminary one.  Even after Plaintiffs prevailed at the Supreme Court, all that meant was that the case could proceed in court.  At that point, significant open questions still remained, including:  whether the case could be compelled to arbitration under the Missouri Uniform Arbitration Act; whether some or all of the claims would be certified

under Rule 23 and/or the FLSA; whether the independent contractor drivers were

misclassified as independent contractors; whether training time was compensable

under the FLSA and the Missouri wage laws and common law; whether sleeper berth

time in excess of eight hours per day was compensable;[3] whether and to what extent

certain deductions from drivers' pay was unlawful, etc.

Moreover, and as discussed in more detail in Section I.7, *infra*, the fact that

Plaintiffs took on this case on a full contingency fee basis increased the risks.  "'A

contingency fee arrangement often justifies an increase in the award of attorneys' fees,'"

because of contingency fee cases involve the "'investment of substantial time, effort,

and money,'" with "'the risk[] of recovering nothing.'"  *Lupron*, 2005 WL 2006833, at *4

(quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D.Fla. 1988), *aff'd*, 899

F.2d 21 (11th Cir.1990)).

In spite of significant uncertainty in this case, Plaintiffs' counsel were able to

negotiate a settlement that afforded substantial monetary and non-monetary relief to

over 40,000 class members.  This factor also supports the requested fee award.

---

[3]    As to the sleeper berth issue, as this Court has recently noted, the United States Department of Labor has recently issued an opinion (on a particular fact pattern) that sleeper berth time is presumptively not compensable, and courts have recently gone both ways on this issue, illustrating the contentiousness of this particular issue.  *See, e.g., Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 395 (D. Mass. 2019) (discussing DOL opinion letter but concluding that, under the relevant DOL regulations, sleeper berth time in excess of eight hours per day was compensable); *Browne v. PAM Transport, Inc.*, 2020 WL 412126, at *3 (W.D. Ark. Jan. 24, 2020) (declining to revisit earlier decision that sleeper berth time in excess of eight hours per day was compensable after DOL opinion letter); *but see Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, at *7 (D. Neb. Feb. 2, 2017) ("[S]leeping berth time is compensable, if ever, only where a plaintiff can demonstrate that he or she was on duty while in the sleeper berth.").

5.      **The amount of time devoted to the case by counsel.**

Courts in the First Circuit may (though need not) look at counsel's lodestar fees to "doublecheck" the reasonableness of a percentage-of-common-fund fee award.  *See Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (noting that lodestar method can be used to "doublecheck" the reasonableness of a fee); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) ("In the First Circuit, '[t]he lodestar approach . . . can be a check or validation of the appropriateness of the percentage of funds fee, but is not necessary.'").

To date, Plaintiffs' counsel's hours, multiplied by reasonable hourly rates, come to:

| Firm | Timekeeper | Title | Years of experience | Hours | Rate | Fees |
|---|---|---|---|---|---|---|
| Fair Work, P.C. | Brant Casavant | Attorney | 10-15 | 3.4 | $500 | $1,700.00 |
| Fair Work, P.C. | Hillary Schwab | Attorney, Founding Partner | 20+ | 628.6 | $650 | $408,590.00 |
| Fair Work, P.C. | Rachel Smit | Attorney | 5-10 (significant contrib.) | 284.2 | $450 | $127,890.00 |
| Fair Work, P.C. | Kendall Gedeon | Paralegal | | 40.9 | $175 | $7,157.50 |
| Andrew Schmidt Law PLLC | Andrew Schmidt | Attorney, Founding Partner | 10-15 | 170.3 | $550 | $93,665.00 |
| Andrew Schmidt Law PLLC | Peter Mancuso | Attorney | 10-15 | 154.8 | $500 | $77,400.00 |
| Andrew Schmidt Law PLLC | Hillary Cheng | Attorney (junior) | under 5 years | 9.7 | $250 | $2,425.00 |
| Public Justice | Brian Hardingham | Attorney | 5-10 | 135.5 | $350 | $47,425.00 |
| Public Justice | Karla Gilbride | Attorney | 10-15 | 118.7 | $500 | $59,350.00 |
| Public Justice | Leah Nicholls | Attorney | 10-15 | 79.95 | $500 | $39,975.00 |
| Public Justice | Paul Bland | Attorney, Executive Director | 20+ | 31.7 | $650 | $20,605.00 |
| Public Justice | Jennifer Bennett | Attorney | 5-10 (significant contrib.) | 1037.37 | $450 | $466,816.50 |
| Public Justice | Ellen Noble | Attorney (junior) | under 5 years | 59.27 | $250 | $14,817.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Public Justice | L. Rhoads | Attorney (junior) | under 5 years | 86.27 | $250 | $21,567.50 |
| Public Justice | G. Gurian | Law Clerk | | 30.75 | $175 | $5,381.25 |
| Public Justice | S. TonNu | Law Clerk | | 70.19 | $175 | $12,283.25 |
| Crimmins Law Firm | Laura Fellows | Attorney | 5-10 | 8.7 | $350 | $3,045.00 |
| Crimmins Law Firm | Matthew Crimmins | Attorney | 15-20 | 461.2 | $650 | $299,780.00 |
| Crimmins Law Firm | Virginia Stevens Crimmins | Attorney, Founding Member | 15-20 | 392.8 | $650 | $255,320.00 |
| Crimmins Law Firm | Jana DeArmond | Paralegal | | 177.4 | $175 | $31,045.00 |
| Crimmins Law Firm | Dalina Stevens | Paralegal | | 0.1 | $175 | $17.50 |
| Hodes Law Firm, LLC | Garrett Hodes | Attorney, Founding Member | 20+ | 646.4 | $650 | $420,160.00 |
| **Total** | | | | **4628.2** | | **$2,416,416.00** |

Schwab Aff. ¶¶ 14-17.  Plaintiffs' counsel expect that substantial additional time will be expended on class settlement administration, communication with class members, briefing for final settlement approval, etc., between now and the end of the case as well. Schwab Aff. ¶ 18.

As of now, the lodestar multiplier for the requested fee award would be approximately 3.8 ($9,240,000 divided by $2,416,416).  This multiplier is well within the range of reasonableness.  *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (approving fees with "fairly common" lodestar multiplier of over 4); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming district court's fee award for which the lodestar cross-check resulted in a 3.65 multiplier).  In fact, the 3.8 multiplier is significantly lower than lodestar multipliers previously approved by this Court.  *See, e.g., Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (Saris, J.) (approving lodestar multiplier of 8.9, even where plaintiffs' counsel were "piggybacking" on prior success by another plaintiffs' firm in a different case); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D.

Mass. Aug. 3, 2009) Saris, J.) (awarding fees representing 8.3 lodestar multiplier). Moreover, the lodestar multiplier will decrease, because of the anticipated additional time that Plaintiffs' counsel will continue to spend on this case.  Schwab Aff. ¶ 18.

Accordingly, the fact that the one-third fee award would constitute a lodestar multiplier under 4 further supports approving the fee award.

**6.      Awards in similar cases.**

The requested fee award, of 33% of the settlement fund that has been made available to the class, is consistent with other fee awards in this District and elsewhere. *See, e.g., Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (awarding 33.33% of $40 million common fund); *Roberts v. TJX Companies, Inc.*, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) (awarding attorneys' fees of 1/3 (33 1/3%) of $4.75 million settlement); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) (awarding 33% of $163.9 million settlement fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (awarding 33% of $67 million settlement); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. 2001) (awarding attorneys' fee award of over $123 million, which was 33 1/3% of common fund).

**7.      Public policy considerations.**

As the Second Circuit held in *Goldberger v. Integrated Resources, Inc.*, attorneys' fee awards "should reflect the important public policy goal of 'providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'" *Baudin v. Res. Mktg. Corp., LLC*, 2020 WL 4732083, at *13 (N.D.N.Y. Aug. 13, 2020) (quoting *Goldberger*, 209 F.3d 43, 51 (2d Cir. 2000)).  Awarding attorneys' fees as a percentage of

the common fund recognizes the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees.  *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").

Awarding fees from a common fund also incentivizes parties to discuss settlement early and reach an early resolution of a case, if possible.  Indeed, it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005).  Moreover, awarding fees from a common fund recognizes that firms may spend years developing the case law in a particular field and obtaining favorable decisions, all of which contributes to early resolution of later cases.  *See In re Giant Interactive Group Inc. Sec. Litig.*, 2011 WL 5244707, at *10 (S.D.N.Y. Nov. 2, 2011) (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005)) ("[T]he Court finds [th]at public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so.'").

In the context of wage and hour class actions particularly, "public policy favors a common fund attorneys' fee award."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013).  Indeed, "[p]rotecting workers from wage-and-hour violations is of genuine public interest, and fees in such cases should provide incentives for counsel to

bring such cases in the future." *Baudin*, 2020 WL 4732083, at *13; *see also Beckman*, 293

F.R.D. at 477 ("The FLSA and state wage and hour statutes are remedial statutes, the

purposes of which are served by adequately compensating attorneys who

protect wage and hour rights.").  As one court has noted:

> Where relatively small claims can only be prosecuted through aggregate
> litigation, "private attorneys general" play an important role. . .  Attorneys
> who fill the private attorney general role must be adequately compensated
> for their efforts. If not, wage and hour abuses would go without remedy
> because attorneys would be unwilling to take on the risk. . . Adequate
> compensation for attorneys who protect wage and hour rights furthers the
> remedial purposes of the FLSA and [state wage laws].

*Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019).

Plaintiffs' counsel took this case on a fully contingent fee arrangement, enforcing

the wage and hour laws on behalf of tens of thousands of workers, the vast majority of

whom would be wholly without remedy if not for Plaintiffs' counsel's advocacy.  Public

policy considerations support the requested fee award.

## II.    PLAINTIFFS' REQUESTED AWARD FOR COSTS IS REASONABLE.

The settlement agreement provides that Plaintiffs' counsel may request an award

of costs of up to $225,000, including the costs of settlement administration.  Schwab Aff.

¶ 19.  Plaintiffs' counsel intend to submit updated information about costs with the

motion for final settlement approval but currently expect that the total costs actually

expended will exceed $225,000.  To date, Plaintiffs' counsel have incurred $71,376.89 in

litigation expenses, and the original bid from the settlement administrator was for

$145,348, for a total of $216,724.89.  Schwab Aff. ¶¶ 20-21.  However, there have been

unanticipated costs since that time, including additional settlement administration in

connection with the issues raised in Plaintiffs' emergency motion for corrective notice, including an increased call volume, more email communications, etc.  ECF Dkt. No. 265. Accordingly, settlement administration costs will certainly exceed the original bid. Schwab Aff. ¶ 22.

Expenses such as those sought in this case have been awarded as reasonable in other class actions in this District.  *See, e.g., Carlson*, 447 F. Supp. 3d at 6 (awarding expenses requested by Plaintiffs in class action for "costs associated with mediation, travel expenses, filing fees, and postage"); Bez*dek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324 ("The listed expenses include, among other things, costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings.  I find these expenses reasonable and will allow the request.").

Pursuant to the settlement agreement, Plaintiffs' counsel will only seek up to $225,000 in costs, even if actual costs exceed that amount.  Plaintiffs' costs are reasonable.

## CONCLUSION

For the reasons set forth above, Plaintiffs' counsel's request for an award of $9,240,000 (33% of the settlement fund) for attorneys' fees and an award of costs up to $225,000 is reasonable.  Plaintiffs will renew their request for this award of attorneys' fees and expenses in the final settlement approval motion.

Respectfully submitted,

DOMINIC OLIVEIRA,
on behalf of himself
and all others similarly situated,

By their attorneys,

 _/s/ Hillary Schwab_____
Hillary Schwab (BBO #666029)
Brant Casavant (BBO #672614)
Rachel Smit (BBO #688294)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 607-3261
Fax. (617) 488-2261
hillary@fairworklaw.com
brant@fairworklaw.com
rachel@fairworklaw.com

Andrew Schmidt, Esq.
        Admitted *pro hac vice*
Andrew Schmidt, PLLC
97 India St.
Portland, ME 040101
Tel. (207) 619-0320
Fax. (207) 221-1029
Andy@MaineWorkerJustice.com

Virginia Stevens Crimmins, MO #53139
Admitted *pro hac vice*
Matthew R. Crimmins, MO #53138
Admitted *pro hac vice*
CRIMMINS LAW FIRM LLC
214 S. Spring Street
Independence, Missouri 64050
(816) 974-7220 Telephone
(855) 974-7020 Facsimile
v.crimmins@crimminslawfirm.com
m.crimmins@crimminslawfirm.com


Garrett M. Hodes, MO #50221
Admitted *pro hac vice*
900 Westport Road, 2nd Floor
HODES LAW FIRM, LLC
Kansas City, Missouri 64111
(816) 931-1718 Telephone
(816) 994-6276 Facsimile
garrett@hodeslawfirm.com

Dated:  November 23, 2020

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 23, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

 _/s/ Hillary Schwab_____
Hillary Schwab